United States District Court
Southern District of Texas
**ENTERED**
November 25, 2015
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GARY FRAKES, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-14-1753 |
| | § | |
| SERGEANT BILLY MASDEN, *et al.*, | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

This civil rights case is before the Court on the Motion for Final Summary Judgment ("Motion") [Doc. # 61] filed by Defendant Captain Dustin Ott, asserting qualified immunity.  Plaintiff Gary Frakes filed a Response [Doc. # 69], and Ott filed a Reply [Doc. # 71].  Also pending is Defendant's Motion to Exclude or Limit the Testimony of Plaintiff's Purported Expert Witness Roger Clark ("Motion to Exclude") [Doc. # 62], to which Plaintiff filed a Response [Doc. # 70], and Defendant filed a Reply [Doc. # 62].  Having reviewed the full record and applicable legal authorities, the Court **grants** Ott's Motion for Summary Judgment and **grants in part and denies in part** the Motion to Exclude.

## I.    BACKGROUND

For purposes of Ott's Motion for Summary Judgment on qualified immunity, the material facts are either uncontroverted, established by video and audio recorded

evidence, or viewed in the light most favorable to Plaintiff.  Plaintiff is a 67-year-old retired veterinarian who lives in Magnolia, Texas.  On several occasions, usually when the road in front of Plaintiff's house was wet, drivers crashed into and damaged his fence.  In connection with these incidents, Plaintiff had several confrontational encounters with tow-truck drivers, firefighters, emergency medical personnel, and law enforcement officials.  Plaintiff also had confrontational encounters with employees of the electric company, which resulted in the company moving its equipment to a different location where it could be maintained without accessing Plaintiff's property. *See* Video/Audio of April 27, 2013, Incident, Exh. 8 to Co-Defendant Masden's Motion for Summary Judgment [Doc. # 33].

On June 11, 2013, Plaintiff received a telephone call that a vehicle had crashed through his fence.  Plaintiff went to the accident scene, taking his camera, his shotgun, and shotgun shells.  Ott, an officer with the City of Stagecoach Police Department had already arrived, as had Magnolia Fire Department personnel and vehicles.  While Ott was obtaining information from the driver of the wrecked vehicle, Plaintiff arrived at the scene with the shotgun.  *See* Video/Audio Recording from Ott's Patrol Vehicle ("Ott Video/Audio"), Exh. A to Motion for Summary Judgment.  A member of the Magnolia Fire Department later told Ott that he had been concerned for the safety of his men when Plaintiff appeared at the accident scene with a firearm.  *See id.*

Plaintiff admits that he was carrying the shotgun with the muzzle pointing in Ott's direction.  *See* Frakes Deposition, Exh. 2 to Masden Motion for Summary Judgment [Doc. # 33], pp. 69-70.  It is uncontested, however, that he did not have the shotgun shouldered and aimed at Ott or any other individual.  Ott asked Plaintiff why he had a shotgun with him, and Plaintiff responded that he had a right to carry a shotgun on his own property.[1]  Ott advised Plaintiff that his presence with the shotgun made him "a little bit nervous," and Plaintiff responded that he knew that and "did it on purpose to make [Ott] a little nervous."  *See* Ott Video/Audio.  It is undisputed that Ott drew his firearm, which he held pointed at the ground.  Ott then called for backup, stating that he needed "another unit out here real fast, he's got a gun in his hand."  *See id.*  After Ott called for backup and before the backup arrived, Plaintiff placed the shotgun against a tree on his property.  Ott repeatedly asked Plaintiff not to pick up the gun.  *See id.* ("Please do not pick up that gun, sir.  Please do not.  I'm asking you to please not pick up that gun.").  Ott also stated, "I'm not pointing a gun at you.  Don't.  Don't touch the gun, sir."  *Id.*  Plaintiff responded, "You can shoot me, I don't

---

[1]    Throughout the encounter with Ott and Co-Defendant Masden, Plaintiff repeatedly stated that he "had a right" to have a shotgun on his property.  It is unclear what Plaintiff understood that "right" to involve, but he appeared to reject the officers' explanation that Plaintiff could not have the firearm in his possession at the scene of an investigation, particularly where the firearm was causing law enforcement to feel threatened.  *See* Ott Video/Audio.

care.  But it's not going to look good in the papers."  *Id.*  Ott again asked Plaintiff not to touch the gun.  *See id.*

Co-Defendant Sergeant Billy Masden, an officer with the Montgomery County Constable's Office, received Ott's call for backup.  When Masden arrived at the scene, Ott informed him that Plaintiff was the man with the gun.  Plaintiff told Masden that he was the property owner, that he was taking photographs, and that he was allowed to carry a shotgun on his own property.  *Id.*  Plaintiff repeatedly told Ott and Masden that it is legal to carry a shotgun on your own property.  *Id.*

Plaintiff testified that Masden grabbed him, searched him, handcuffed him, and placed him in the back of Ott's patrol vehicle.  It is undisputed that Masden found shotgun shells in Plaintiff's pocket.  After less than one minute in the patrol vehicle, Frakes advised Masden, "I'm telling you, I'm going to file a lawsuit."  *See id.* Masden obtained information from Plaintiff such as his name and date of birth.  *See id.*  Masden explained to Plaintiff that he could not have a firearm at the scene where law enforcement officers were trying to conduct an investigation, particularly if the firearm created fear in other people during the investigation.  *See id.*

Plaintiff presented his own testimony that it was very hot in the police car and that the handcuffs were too tight.  Plaintiff has stated on different occasions that he was in Ott's police car for various times ranging from 15 to 30 minutes.  The video

recording from Ott's vehicle establishes that Plaintiff was in that vehicle for approximately 19 minutes.  *See id.*

While Plaintiff was in Ott's vehicle, Texas Department of Public Safety ("DPS") Trooper Jared Gray arrived at the accident scene.  The incident from that moment forward was video recorded, with accompanying audio, on the dashboard camera in Gray's DPS vehicle.  *See* DPS Dashcam Video/Audio, Exh. B to Motion. Gray obtained information from Ott, and told Ott "if you want to take him in, you can charge him with interference."  *See* Ott Video/Audio.  Instead, Plaintiff was released from the car, the handcuffs were removed, and Plaintiff was allowed to take photographs of the scene.

As promised, Plaintiff filed this lawsuit against Masden and Ott, each in his individual capacity.  Plaintiff filed an amended complaint, alleging that Masden and Ott violated his Fourth and Fourteenth Amendment rights[2] "when they detained and arrested him and searched him, and put . . . him in the stifling squad car without probable cause or reasonable suspicion."  *See* First Amended Complaint [Doc. # 7],

---

[2]     In his Response to Ott's Motion for Summary Judgment, Frakes argues that Ott violated his rights under the First and Second Amendments by violating his right to free speech and his right to bear arms.  The First Amended Complaint does not include claims under the First and Second Amendments, and the deadline for amendments to pleadings expired December 31, 2014.  *See* Docket Control Order [Doc. # 18].  As a result, the Court will not permit Plaintiff to assert First and Second Amendment claims in this lawsuit.

¶ 22.  By Order [Doc. # 37] entered March 4, 2015, the Fourteenth Amendment claim against Ott was dismissed, leaving the Fourth Amendment claim pending against Ott in his individual capacity.

On April 13, 2015, the Court granted summary judgment in Masden's favor. *See* Memorandum and Order [Doc. # 43].  The Court held that "Plaintiff was subjected to an investigative detention and was not subjected to a formal arrest." *Id.* at 11.  The Court held also that Masden was entitled to qualified immunity for Plaintiff's unlawful detention and excessive force claims.  *Id.* at 11-14 (unlawful detention claim); 14-17 (excessive force claim).

Ott has now moved for summary judgment, and to exclude opinions by Plaintiff's expert.  The motions have been fully briefed and are now ripe for decision.

## II.   **MOTION TO EXCLUDE**

Ott has moved to exclude or limit opinions expressed by Plaintiff's expert, Roger Clark.  As explained below, to the extent Clark's opinions are based on factual assumptions refuted by video evidence, audio recordings, or other uncontroverted evidence in the record, the opinions are excluded as unreliable.  Clark's opinions that are based on legal conclusions, particularly those that are inconsistent with this Court's prior rulings, are excluded as irrelevant.  In all other respects, the Court denies the Motion to Exclude Clark's opinions as expressed in his report [Exh. 1 to Motion

to Exclude], as explained during his deposition testimony [Exh. 2 to Motion to Exclude].

### A.    <u>Standard for Admissibility of Expert Opinions</u>

The Federal Rules of Evidence provides for opinion testimony from a witness whose "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue" if the testimony "is based upon sufficient facts or data" and is "the product of reliable principles and methods," and if "the expert has reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702. The proffered expert opinions must be both relevant and reliable. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993); *Brown v. Ill. Cent. R.R. Co.*, 705 F.3d 531, 535 (5th Cir. 2013). The party offering the expert opinions bears the burden of establishing their admissibility by a preponderance of the evidence. *See Mathis v. Exxon Corp.*, 302 F.3d 448, 459-60 (5th Cir. 2002); *U.S. v. Fullwood*, 342 F.3d 409, 412 (5th Cir. 2003); *Seaman v. Seacor Marine, LLC*, 326 F. App'x 721, 724 (5th Cir. Apr. 30, 2009).

Legal opinions expressed by a proffered expert are generally inadmissible as irrelevant. *See Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983). "[T]here is one, but only one, legal answer for every cognizable dispute. There being only one applicable legal rule for each dispute or issue, it requires only one spokesman

of the law, who of course is the judge." *Askanase v. Fatjo*, 130 F.3d 657. 673 (5th

Cir. 1997); *accord Waste Mgmt. of La., LLC v. Parish*, 2015 WL 5798029, *13 (E.D.

La. Oct. 5, 2015).   An expert witness may not express legal opinions regarding

whether use of force was reasonable for purposes of the Fourth Amendment. *See U.S.

v. Williams*, 343 F.3d 423, 435 (5th Cir. 2003); *McBroom v. Payne*, 478 F. App'x 196,

199 (5th Cir. 2012).

    When determining whether proffered expert opinions are reliable, the court

must make "a preliminary assessment of whether the reasoning or methodology

underlying the testimony is . . . valid and of whether that reasoning or methodology

properly can be applied to the facts in issue." *Brown*, 705 F.3d at 535 (quoting

*Daubert*, 509 U.S. at 592-93).  The *Daubert* reliability assessment applies to the facts

underlying the expert's opinion. *Moore v. Int'l Paint, L.L.C.*, 547 F. App'x 513, 515

(5th Cir. 2013) (citing *Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 355 (5th

Cir. 2007)).  Specifically, an expert's opinion that is based on erroneous information

does not satisfy the reliability requirement. *See Paz v. Brush Engineered Materials,

Inc.*, 555 F.3d 383, 389 (5th Cir. 2009) (affirming the exclusion of an expert opinion

that relied on false assumptions rebutted by undisputed evidence in the record).  As

in the summary judgment context, the Court should credit the facts depicted in a

videotape and audio recording. *See Buchanan v. Gulfport Police Dept.*, 530 F. App'x

307, 311 (5th Cir. June 4, 2013) (quoting *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011)) (summary judgment context).  "When an expert's testimony is 'not based upon the facts in the record but on altered facts and speculation designed to bolster [a party's] position,' the trial court should exclude it." *Moore*, 547 F. App'x at 515 (quoting *Guillory v. Domtar Indus., Inc*., 95 F.3d 1320, 1331 (5th Cir. 1996)).  The existence of an adequate factual basis to support the expert opinion is "in all instances mandatory."  *See Moore*, 547 F. App'x at 515 (quoting *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007)).

## B.  <u>Daubert Analysis of Clark's Opinions</u>

Plaintiff designated Roger Clark as his expert witness in this case, and provided Clark's Report.  Clark was a member of the Los Angeles County Sheriff's Department between 1965 and 1993.  Since his retirement in 1993, he has served as an expert witness on topics including use of force, investigations, police procedures, police tactics, investigative procedures, and shooting scene reconstruction.

***Opinion 1.***  Clark's first opinion set forth in his Report relates to Ott's conduct at the scene and that "Ott would know that nothing occurring at the time was criminal behavior or would justify a detention or arrest."[3]  *See* Clark Report, Exh. 1 to Motion

---

[3]     As noted above, the Court previously held that "Plaintiff was subjected to an investigative detention and was not subjected to a formal arrest."  *See* Memorandum

(continued...)

to Exclude, pp. 18-19.   Clark bases his opinion of the factual assumptions that Plaintiff "had done nothing threatening" and "did nothing to impede or delay Captain Ott or any emergency personnel at the scene." *See id.* at 19.   Clark admitted in his deposition, however, that he had not viewed the video and audio recording of the incident taken from Ott's patrol vehicle. *See* Deposition of Roger Clark, Exh. 2 to Motion to Exclude, p. 9.   Indeed, he testified that he did not know that the video existed. *See id.*   Clark's failure to view and incorporate the contemporaneous video and audio evidence that contradicts Clark's factual assumptions, on which his opinion is based, renders his opinion completely unreliable.

Furthermore, Clark's opinion that Ott ***would know*** that nothing at the time would justify a detention is based on Clark's factual assumption that Plaintiff had done nothing threatening.   This assumption is clearly refuted by the video and audio evidence.   Ott advised Plaintiff clearly before the detention that his presence with the shotgun was making Ott nervous, to which Frakes responded, "yeah, I know.   I did it on purpose to make you a little nervous." *See* Ott Video/Audio.   Frakes explained his decision to bring the shotgun to the accident scene by referring in a rambling manner

---

[3]      (...continued)
         and Order [Doc. # 43], 11.   Clark accepts the Court's ruling, and he testified in his deposition that his opinions are based on a "reasonable suspicion detention" standard. *See* Clark Depo., p. 35.

to a prior encounter with law enforcement after a vehicle had damaged his fence. Plaintiff at this point appeared confused, mistakenly believing that Ott was the officer with whom he had previously dealt.  *See id.*  Although Plaintiff placed the shotgun against a tree, it is clear from the audio portion of the Ott Video/Audio that Plaintiff continued to go near the firearm.  This caused Ott to plead repeatedly with Plaintiff not to pick up or touch the shotgun.  *See id.*

Ott also expressed concern about Frakes's interference with the investigation and the safety of the driver of the wrecked vehicle.  In an attempt to calm Frakes, Ott told him "I don't want you to be in an aggressive situation toward [the driver] because he's got insurance, which is obviously going to take care of your fence, if that's what you're upset about."  *See id.*  Additionally, a Magnolia Fire Department supervisor on the scene expressed concern, stating that Plaintiff's presence with a firearm made him uncomfortable about the safety of his men.  *See id.*

In conclusion, although Plaintiff did not aim the shotgun at anyone or affirmatively threaten to shoot anyone, it was reasonable as a matter of law for Ott to perceive Plaintiff's presence at the investigation scene with a shotgun as threatening to himself, to the driver of the wrecked vehicle, and to other emergency personnel at the scene.  The video/audio evidence refutes Clark's opinion that Plaintiff had done nothing threatening.

Clark's factual assumption that Plaintiff "did nothing to impede or delay Captain Ott" is likewise refuted by the record.  Ott was obtaining information from the driver of the wrecked vehicle when Plaintiff arrived on the scene with a shotgun. The vehicle had crashed into Plaintiff's fence on the edge of his property along a public two-lane road.  At that time, Ott began to deal with Plaintiff and the firearm situation instead of completing the accident investigation.  *See* Ott Video/Audio. Later, Ott informed both Masden and Gray that while he was obtaining the driver's information to conduct the accident investigation, Plaintiff arrived with the shotgun. *See id.*

Additionally, Clark's opinion that "no crime was in progress or had occurred" is an inappropriate legal conclusion.  In this case, Plaintiff admitted during his deposition that he arrived at the accident scene with a firearm pointing in Ott's direction.  *See* Frakes Depo., pp. 69-70.  Plaintiff's presence at the scene with the firearm was sufficiently threatening that Ott drew his firearm and called for backup, stating that he needed "another unit out here real fast, he's got a gun in his hand." *See id.*  At that point, Ott had a reasonable suspicion that Plaintiff was committing the offenses of disorderly conduct and/or interference with public duties.  A person commits the offense of "disorderly conduct" if he intentionally and knowingly displays a firearm in a public place in a manner calculated to alarm.  *See* TEX. PEN.

CODE § 42.01.  Plaintiff is heard on the audio portion of the video of the incident

saying that he knew bringing the shotgun to the scene was going to cause the officers

and other first responders there to be nervous and "get upset."  A person commits the

offense of "interference with public duties" if the person with criminal negligence

"interrupts, disrupts, impedes, or otherwise interferes with" a law enforcement officer

in the performance of his duties.  *See* TEX. PEN. CODE § 38.15(a).  It is unmistakable

from the video and audio evidence that Plaintiff's presence at the scene with a firearm

interrupted Ott in the performance of his duties investigating the accident and required

him to deal with Plaintiff instead.

To the extent Clark's first opinion is based on factual assumptions plainly

refuted by video, audio, and other uncontested evidence in the record, and to the

extent the opinion offers a legal conclusion, the Motion to Exclude Opinion 1 is

granted.

**_Opinion 2._**  In the second opinion in Clark's Report, he discusses the training

regarding detentions that is generally provided to law enforcement officers.  Clark's

description of that training is clearly admissible.  His opinion that "Dr. Frakes was

never in violation of any law," however, is a legal conclusion that, as discussed in

connection with Opinion 1, is inadmissible.

*__Opinion 3.__*  In his third opinion, Clark describes training regarding arrests that law enforcement officers usually receive.  This description of standard training procedures is admissible.  Clark then opines, however, that "Dr. Frakes was placed under arrest as defined by law."  *See* Clark Report, p. 19.  This is an improper legal conclusion and, additionally, in contrary to this Court's prior ruling.  The Motion to Exclude is granted as to the final sentence in Opinion 3.

*__Opinion 4.__*   In the fourth opinion in his report, Clark states, without consideration of the contemporaneous video/audio recording, that there was neither disorderly conduct nor reasonable suspicion of disorderly conduct in this case.  To the extent this statement could be construed as a factual opinion, it is inadmissible as lacking in reliability.  The statement could be deemed a legal conclusion and, as such, is inadmissible for that reason.

Clark states also that Plaintiff "has categorically denied bringing his shotgun with him with any intent to intimate [*sic*] or alarm anyone."  *See id.* at 20.  This factual assumption on which the fourth opinion is based is refuted by the video and audio evidence.  When Ott stated to Plaintiff that his presence at the scene with the firearm made him nervous, Plaintiff responded, "Yeah, I know.  I did it on purpose to make you a little nervous."  *See* Ott Video/Audio.

To the extent Clark's fourth opinion is based on factual assumptions clearly refuted by video and audio evidence, and to the extent the opinion offers a legal conclusion, the Motion to Exclude Opinion 4 is granted.

***Opinion 5.***   Clark states in his fifth opinion that "no interference with public duties occurred as alleged or even a reasonable suspicion that it occurred." *See* Clark Report, p. 20.  This is a legal conclusion, and the Motion to Exclude it is granted. Additionally, the opinion is refuted by the video and audio evidence that shows clearly and unequivocally that Plaintiff's sudden appearance at the accident scene with a shotgun interfered with Ott's investigation of the accident and required that he, instead, focus his attention on Frakes and the firearm.

***Opinion 6.***  In his final opinion, Clark discusses training that law enforcement officers often receive regarding protections afforded by the United States Constitution and training about an officers' obligation to intervene.  This discussion of training programs is appropriate expert testimony and is admissible.

Clark continues to opine that "Captain Ott, knowing the facts that Dr. Frakes had not violated any law, was not a danger to anyone and should not have been arrested or detained[,] had a duty to protect Dr. Frakes and intervene to prevent Sergeant Masden from taking Dr. Frakes into custody." *See id.*  This part of Clark's opinion is based on factual assumptions that, as discussed above, are contrary to

video, audio, and other uncontested evidence that Clark failed to review and/or failed to consider.  As discussed above and in the Court's prior Memorandum and Order, there was reasonable suspicion that Frakes committed the offenses of disorderly conduct and/or interference with public duties.  The video and audio evidence establishes that Ott felt sufficiently threatened by Frakes's armed presence at the scene of the accident investigation that he drew his weapon and called for immediate backup.  As discussed in the Court's prior Memorandum and Order, there is no evidence that suggests that Masden's decision to detain Plaintiff for approximately 19 minutes was objectively unreasonable.

Clark's opinion regarding Ott's duty to intervene is based on the above-referenced factual assumptions that are contrary to the video, audio, and other uncontested evidence.  Additionally, the opinion constitutes an improper legal conclusion.  The Motion to Exclude is granted as to the final sentence of Clark's sixth opinion.

### C.    Conclusion Regarding Motion to Exclude

To the extent Clark expresses opinions that are legal conclusions or are based on factual assumptions plainly refuted by video, audio, and other uncontroverted evidence in the record, including Plaintiff's deposition testimony, the Motion to Exclude is granted.  To the extent Clark describes training that is generally provided

to law enforcement officers, although without reference to any training actually provided to Ott, the opinions are admissible and the Motion to Exclude those statement is denied.

## III.   MOTION FOR SUMMARY JUDGMENT

### A.   Standard for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides for the entry of summary judgment against a plaintiff who fails to make a sufficient showing of the existence of an element essential to his case and on which he will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*).   Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P.  56(a); *Celotex*, 477 U.S. at 322-23; *Curtis*, 710 F.3d at 594.

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact."  *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 839 (5th Cir. 2012).  If the moving party meets its initial burden, the non-

movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial.  *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004); *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted).  "An issue is material if its resolution could affect the outcome of the action."  *Spring Street Partners-IV, L.P. v. Lam*, 730 F.3d 427, 435 (5th Cir. 2013).  "A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted); *see also Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). .

    In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party.  *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).  Nonetheless, the Court assigns "greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene."  *Buchanan v. Gulfport Police Dept.*, 530 F. App'x 307, 311 (5th Cir. June 4, 2013) (quoting *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011)).  Specifically, the Court "need not rely on the plaintiff's description

of the facts where the record discredits that description but should instead consider the facts in the light depicted by the videotape." *Id.* (quoting *Carnaby*, 636 F.3d at 187).

"'Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial.'" *Pioneer Exploration, L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002); *accord Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008).  Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (citation and internal quotation marks omitted).  In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence. *See* FED. R. CIV. P. 56(c)(4); *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 776 (5th Cir. 2000).  Moreover, "it is well settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony." *S.W.S. Erectors, Inc. v. Infax,*

*Inc.*, 72 F.3d 489, 495 (5th Cir. 1996)); *accord Doe v. Dallas Independent School District*, 220 F.3d 380, 385-87 (5th Cir. 2000); *Copeland v. Wasserstein, Perella & Co., Inc.*, 278 F.3d 472, 482 (5th Cir. 2002).

### B.      Standard for Qualified Immunity

Qualified immunity shields a government official performing discretionary functions from civil liability unless his conduct violated a constitutional right that was "clearly established" that the time of the challenged conduct.  *See Plumhoff v. Richard*, __ U.S. __, 134 S. Ct. 2012, 2023 (2014); *Ashcroft v. al-Kidd*, 563 U.S. 731, ___, 131 S. Ct. 2074, 2080 (2011); *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001); *Toney v. Owens*, 779 F.3d 330, 336 (5th Cir. 2015).  A constitutional right is clearly established when the contours of the right were so definite that "any reasonable official in the defendant's shoes would have understood that he was violating it."  *See Plumhoff*, 134 S. Ct. at 2023; *Trent v. Wade*, 776 F.3d 368, 383 (5th Cir. 2015).  There need not be a case directly on point for the right to be clearly established, "but existing precedent must have placed the statutory or constitutional question beyond debate."  *See Mullenix v. Luna*, __ U.S. __, 136 S. Ct. 305, 308 (Nov. 9, 2015) (quoting *Ashcroft*, 563 U.S. at 741).

The Court must also consider whether the defendant's conduct "would, as a matter of law, be objectively unreasonable in light of clearly established law."  *Id.*

at 376; *Kinney v. Weaver*, 367 F.3d 337, 346 (5th Cir. 2004) (*en banc*).  "[A] defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff."  *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001) (emphasis in original); *see also Dawson v. Anderson Cnty., Tx.*, 566 F. App'x 369, 370 (5th Cir. May 6, 2014).

The Court must not define "clearly established law at a high level of generality since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced."  *See Plumhoff*, 134 S. Ct. at 2023 (internal quotation omitted); *see also Mullenix*, 136 S. Ct. at 308.  "The dispositive question is whether the violative nature of *particular* conduct is clearly established."  *Mullenix*, 136 S. Ct. at 308 (emphasis in original).  "This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition."  *Id.* (internal quotation and citation omitted).  "Such specificity is especially important in the Fourth Amendment context . . .."  *Id.*

"When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense."  *Cantrell v. City of Murphy*, 666 F.3d 911, 918 (5th Cir.), *cert. denied*, __ U.S. __, 133 S. Ct. 119 (2012) (citing

*McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (*en banc*));
*Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010).  To avoid summary
judgment on qualified immunity, a plaintiff in a § 1983 case must present evidence
that, if proved, would overcome the individual defendant's qualified immunity
defense.  *Geter v. Fortenberry*, 849 F.2d 1550, 1553 (5th Cir. 1988); *Cobb v. City of
Harahan*, 516 F. App'x 337, 340 (5th Cir. Mar. 11, 2013).

### C.   <u>Ott's Actions</u>

Plaintiff complains that Ott called for backup, asked him to put down the
shotgun, and took temporary custody of the shotgun and ammunition.  There is no
evidence that suggests that any of these actions violated Plaintiff's Fourth Amendment
rights to be free from unreasonable search and seizure.  Indeed, Plaintiff's expert
testified in his deposition that there was nothing wrong with Ott calling for backup or
asking Plaintiff to put down the firearm.  *See* Clark Deposition, Exh. 2 to Motion to
Exclude, p. 26 ("He can call for another officer.  There's nothing wrong with that.
And asking that individual to put the gun down, there's nothing wrong with that
either.").  Clark testified also that there was nothing wrong with Ott taking temporary
custody of the shotgun.  *See id.* at 27.  Based on the uncontroverted evidence, Ott's
actions did not violate Plaintiff's clearly established rights under the Fourth
Amendment.

### D.      Claim that Ott Should Have Intervened to Stop Masden's Actions

Although not pled in the First Amended Complaint, Plaintiff argues in opposition to summary judgment that Ott is liable for Masden's violations of Plaintiff's Fourth Amendment rights as a bystander with a duty to intervene.  The Court, in the interest of a complete record, will address this unpleaded theory.

A law enforcement officer "who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983."  *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995); *see also Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013), *cert. denied*, __ U.S. __, 134 S. Ct. 1935 (2014).  An officer "may be liable under § 1983 under a theory of bystander liability where the officer (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act."  *Whitley*, 726 F.3d at 646 (internal quotations and citation omitted).

***Bystander Liability for a Non-Excessive Force Claim***.  The bystander theory of liability is generally recognized in the excessive force context.  *See id.*, n.11; *Perez v. Tedford*, 2013 WL 6835234, *3 (W.D. Tex. Dec. 23, 2013); *Grant v. Wisener*, 2012 WL 1108538, *2 (E.D. Tex. Feb. 16, 2012).  In footnote 11 in *Whitley*, the Fifth Circuit suggested that the bystander liability doctrine might apply to other

constitutional violations.  *See Whitley*, 726 F.3d at 646 n.11.  In support of the comment, the Fifth Circuit cited *Richie v. Wharton Cty. Sheriff Dept. Star Team*, 513 F. App'x 382, 385 (5th Cir. Feb. 19, 2013).  In *Richie*, a *per curiam* unpublished opinion, the Fifth Circuit rejected the plaintiff's assertion that all members of the STAR Team should be liable for conduct by other members in connection with the execution of a no-knock search and arrest warrant during which he was injured.  The Fifth Circuit noted that the plaintiff did not allege the existence of an agreement or conspiracy among the STAR team members, that he failed to allege "facts to suggest that the members of the STAR Team were liable under a theory of bystander liability," and that there was no vicarious liability under § 1983.  *See Richie*, 513 F. App'x at 385.  The Fifth Circuit did not, in either *Richie* or *Whitley*, recognize bystander liability in a context other than the use of excessive force.

Again, for purposes of a complete record, the Court will address Plaintiff's bystander liability argument as if it applied to the investigative detention claim.

***Investigative Detention Bystander Liability.***  Ott asserts qualified immunity for Plaintiff's bystander liability argument relating to Masden's investigative detention of Plaintiff.  Plaintiff argues in response that he should not have been detained because he had committed no crime.

Initially, as noted above, a law enforcement officer's duty to intervene other than in the excessive force context was not clearly established at the time of Frakes's detention. Indeed, at the time of the April 2013 incident at issue in this case, the Fifth Circuit had not issued its decision in *Whitley* even suggesting that the duty to intervene might apply in any context other that excessive force. On this basis, Ott is entitled to qualified immunity on the bystander liability claim regarding his investigative detention. *See, e.g., Mullenix*, 136 S. Ct. at 308.

Additionally, in its prior Memorandum and Order [Doc. # 43], the Court held that Masden was entitled to qualified immunity because the detention of Plaintiff was not objectively unreasonable. In the qualified immunity context, the issue is not whether the officer's decision to detain was correct, but whether the officer had a reasonable suspicion that the detained individual had engaged in criminal activity. *See U.S. v. Massi*, 761 F.3d 512, 521 (5th Cir. 2014) (citing *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). Law enforcement officers who reasonably but mistakenly conclude that reasonable suspicion is present to justify a brief investigatory detention are entitled to qualified immunity. *See Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000). The Court previously held, and again holds here, that Masden had a reasonable suspicion that Plaintiff was committing the offenses of disorderly conduct and/or interference with public duties. *See* Memorandum and Order, p. 13. Indeed, DPS

Trooper Gray stated at the scene that Frakes could be charged with interference.  *See Ott Video/Audio*.  Because Masden's conduct in detaining Plaintiff for approximately 19 minutes was not objectively unreasonable, it was *a fortiorari* not objectively unreasonable for Ott not to intervene to prevent the brief detention.  Ott is entitled to qualified immunity on the bystander liability argument regarding the investigative detention.

***Excessive Force Bystander Liability***.  The Court held previously that Masden was entitled to qualified immunity on Plaintiff's excessive force claim.  *See Memorandum and Order*, pp. 14-17.  The Court held specifically, and again holds here, that the minimal force used to detain Plaintiff – pulling his arm behind his back and handcuffing him tightly – was not clearly excessive to the need to detain him.  *See id.* at 17.  Because the force being used was neither clearly excessive nor objectively unreasonable, there is nothing to suggest that Ott knew Masden was violating Frakes' constitutional right to be free from the use of excessive force.  As a result, it was not objectively unreasonable for Ott not to intervene.  Ott is entitled to qualified immunity on the bystander liability argument in connection with the excessive force claim.

## IV.    CONCLUSION AND ORDER

Based on the foregoing, it is hereby

ORDERED that Ott's Motion to Exclude [Doc. # 62] is **GRANTED IN PART AND DENIED IN PART** as set forth herein.  It is further

ORDERED that Defendant Ott's Motion for Summary Judgment [Doc. # 61] is **GRANTED** and all claims against Defendant Ott are **DISMISSED WITH PREJUDICE**.

The Court will issue a separate final judgment.

SIGNED at Houston, Texas, this 25th day of **November, 2015**.


_____
NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE